UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



------------------------------------------------------------------------X

ROSA CHICLANA, individually and as Mother and
Natural Guardian of DIANDRE SANTIAGO and
ANDREA SANTIAGO,

Plaintiffs,

**09 CV** _____

-against-

**COMPLAINT**

THE CITY OF NEW YORK, DETECTIVE MICHAEL
BRACKEN (Shield 1815, Narcotics Borough Manhattan
North), DETECTIVE JANE DOE, and DETECTIVES
or OFFICERS JOHN DOES 1-5,

JURY TRIAL
DEMANDED



Defendants.

------------------------------------------------------------------------X

Plaintiff **ROSA CHICLANA, individually and as Mother and Natural Guardian of DIANDRE SANTIAGO and ANDREA SANTIAGO,** by her attorney, Joel Berger, Esq., for her complaint alleges, upon information and belief, as follows:

*NATURE OF THE ACTION*

1.     This is an action to recover money damages arising out of defendants' violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including false arrest, false imprisonment, malicious prosecution, illegal search and seizure, and interference with parental rights.

*JURISDICTION AND VENUE*

2.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States.

3.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

### PENDENT JURISDICTION

5.    This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6.    On December 11, 2008, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

7.    At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8.    This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

### JURY DEMAND

9.    Plaintiff demands trial by jury in this action.

### PARTIES

10.    Plaintiff **ROSA CHICLANA** is a citizen of the United States and a resident of the State of New York.  She is an Hispanic woman, age 23.  She is the mother of two children, a boy named Diandre (age 7) and a girl named Andrea (12 months -- 8 months at the time of the most recent incident alleged herein).  She has no prior criminal record of any kind and no prior record of child abuse or neglect of any kind.  She has lived in the same apartment of the Jefferson Houses of the NYC Housing Authority her entire life, without incident.

11.    Defendant City of New York is a municipal corporation organized under the laws of the State of New York.  It operates the New York City Police Department (NYPD), a department or agency of defendant City of New York responsible for the appointment, training, supervision,

promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

12.      At all times relevant herein, defendant Michael Bracken (Shield 1815) was a detective employed by the NYPD, assigned to Narcotics Borough Manhattan North.

13.      At all times relevant herein, defendant Jane Doe was a detective and defendants John Does 1-5 were detectives or officers employed by the NYPD.  Plaintiff believes that they were assigned to the same command at defendant Detective Bracken.  Plaintiff does not know the real names and shields numbers of defendants Jane Doe and John Does 1-5.

14.      At all times relevant herein, defendants Bracken, Jane Doe and John Does 1-5 were acting as agents, servants and employees of defendant City of New York and the NYPD.

15.      At all times relevant herein, all defendants were all acting under color of state law.

### FACTS

16.      On Wednesday, September 17, 2008, at approximately 11:00 P.M., Ms. Chiclana was in bed in her dwelling.  She had allowed her two children to fall asleep on her bed and was about to put them to bed in their own room.

17.      Suddenly numerous police officers in plain clothes broke through the lock on her door without first knocking or otherwise announcing their presence, and burst into the apartment. One of the officers was defendant NYPD Detective Bracken. Two of the officers entered her bedroom, pointed their guns directly at her and her children, and ordered her to stand against a wall. Approximately five other officers, including defendant detective Jane Doe, began searching the living room.  Later Ms. Chiclana was allowed to move to the living room with the children.

3

18.   Ms. Chiclana and her children were terrified.

19.   The officers spent approximately a half-hour searching the apartment thoroughly, but found no contraband of any kind.

20.   Ms. Chiclana was taken into her bathroom by defendant Jane Doe and subjected to a humiliating body-cavity strip search; she required raise her bra, and to pull down her panties, bend over and cough.

21.   The body-cavity strip search uncovered no contraband, either.

22.   At no time did the officers display any search warrant or state that they had one.

23.   If the defendant officers did have a warrant authorizing a "no knock" entry and search of plaintiff's dwelling, the information upon which it was based was grossly unreliable and the extent of unreliability -- including the fact that a previous search of the premises by defendants Bracken, Doe and other officers on January 11, 2008, had not resulted in the discovery of any contraband -- was recklessly withheld from the magistrate who issued the warrant.

24.   If the defendant officers had obtained a warrant authorizing a "no knock" entry and search of plaintiff's dwelling, they failed to fulfill their obligation -- recognized in NYPD Commissioner Kelly's public promises more than 5 years ago -- to make sure that the information upon which they had sought the warrant was accurate before executing it.

25.   In response to the tragic death of Ms. Alberta Spruill in Harlem on May 16, 2003, the NYPD conceded that it has an obligation to continue checking on the reliability of any informant and the reliability of the allegations made by that informant, and the reliability of any

other information upon which a warrant is sought, even after the warrant is issued. *See* Commissioner Kelly's report to the Mayor on the *Spruill* case (May 30, 2003) at 8, 9, 10, 12 and 20, which in turn quotes Chief of Patrol Estavillo's memorandum of October 23, 2002 (Memorandum Number 567s.02). *See also* Commissioner Kelly's testimony before the New York City Council Committee on Public Safety investigating the *Spruill* affair (June 4, 2003) at 41, 48, 88-89. *See also* NYPD Patrol Guide 212-75, revised August 25, 2003 by the Commissioner's Interim Order 40 in response to the *Spruill* tragedy.

26.      For example, the fact that some of the same defendant officers had executed the raid on January 11, 2008, that had not produced any contraband was the sort of "red flag" that indicates inaccurate information about the premises and its occupants and requires further investigation before a warrant is executed. *See* Kelly Report to the Mayor (pp. 8-9) re. "red flags," cited in ¶ 25, above.

27.      Despite the promises of reform in the aftermath of the *Spruill* case, "mistaken" searches of the sort inflicted upon plaintiff have continued to be common in New York City because the NYPD, demonstrating deliberate indifference to the privacy rights of the City's residents and especially its African-American and Latino residents, especially in predominantly African-American and Latino neighborhoods, has placed excessive and unwarranted reliance upon the word of untrustworthy informers, many of whom are criminals and drug addicts or have grudges against the persons against whom they inform.

28.      "Mistaken" searches of the sort inflicted upon plaintiff have become so common in New York City that the NYPD has actually created a squad to fix broken doors, locks and windows in such cases. *See* NYPD Patrol Guide, PG 214-20 (effective January 1, 2000).

29.    The defendant officers conceded to Ms. Chiclana on September 17, 2008, that they had not found any contraband, but told her that she nonetheless had to be detained, while assuring her that she would be released shortly. She was never told what the police were charging her with to justify the arrest.

30.    Ms. Chiclana was taken in handcuffs to a police van and then transported to the 25th Police Precinct, where she was placed in a holding cell.

31.    Subsequently Ms. Chiclana was transported, again in handcuffs, to Manhattan Central Booking, where she endured yet another humiliating body-cavity strip search.

32.    To avoid filling out paperwork admitting that they had obtained and executed a search warrant yet had come up empty-handed, these experienced narcotics officers pretended that baby powder found in the apartment was suspected of being cocaine.

33.    On this flimsy basis, Ms. Chiclana was charged with possession of narcotics with intent to sell, a Class B felony (Penal Law § 220.16 (1)) and criminal use of drug paraphernalia, a Class A misdemeanor (Penal Law § 220.50 (2)).

34.    Either the powder was not tested for the presence of narcotics, or it was tested and found to be devoid of any presence of narcotics.

35.    New York County District Attorney's office declined to prosecute, and Ms. Chiclana was released from Manhattan Central Booking, without having to appear in court, at approximately 6:00 P.M. on September 18. She had been in custody for approximately 19 hours. Documents reflecting the decision to decline prosecution are annexed (arrest number M2008679254).

36.    On January 11, 2008, Ms. Chiclana was also arrested and subjected to the same

6

humiliations under virtually identical circumstances after detectives, including Bracken and Jane Doe, raided her apartment.

37.    To avoid filling out paperwork admitting that they had obtained and executed a search warrant yet had come up empty-handed, these experienced narcotics officers pretended in January 2008 that substances found in plaintiff's apartment were suspected of being narcotics and marijuana.

38.    On this flimsy basis, Ms. Chiclana was charged in January 2008 with the same two offenses as in September 2008 -- possession of narcotics with intent to sell, a Class B felony (Penal Law § 220.16 (1)) and criminal use of drug paraphernalia, a Class A misdemeanor (Penal Law § 220.50 (2)) -- and also with criminal possession of marijuana as a Class B misdemeanor (Penal Law § 221.10 (1) – possession in a public place, burning or open to public view).

39.    On this occasion, also, either the substances allegedly seized were not tested or were tested and found to be devoid of any presence of contraband.

40.    On this occasion, also, the District Attorney's office declined to prosecute and Ms. Chiclana was released from Manhattan Central Booking, without having to appear in court. She was in custody for approximately 20 hours. Documents reflecting the decision to decline prosecution on this occasion are also annexed (arrest number M2008603604).

41.    Defendant Jane Doe, who participated on both occasions, told Ms. Chiclana at the 25th Precinct in September 2008 that she intended to report Ms. Chiclana to the Administration for Children's Services (ACS) as being an unfit parent.

42.    Even though the children's godmother lived next door and was watching over the

7

children while Ms. Chiclana was under arrest, ACS seized Diandre and little Andrea on September 18 and placed them in a foster home.

43.    The children were terrified at the sight of their mother being arrested, and terrified at being separated from her.

44.    Ms. Chiclana did not regain custody of her children until October 1, 2008 -- two weeks after the incident -- when a Family Court Judge determined that there was no basis for their being in foster care.

45.    From September 17 through October 1, 2008, Ms. Chiclana she was allowed to visit her children only once, for a one hour visit.

46.    To this day there is still an open case against Ms. Chiclana at ACS, and she must endure the scrutiny of home visits.  Ms. Chiclana has no prior history of any ACS involvement with her family.

47.    The pendency of an open ACS case has harmed Ms. Chiclana's chances for employment.  For example, one day care center recently refused to hire her because of the ACS case.

48.    In addition to the ACS scrutiny, Ms. Chiclana is now also facing scrutiny by the New York City Housing Authority (NYCHA) over the two totally unjustified police raids on her apartment.  She lives in fear that ACS may take her children away from her again, and she lives in fear that NYCHA will evict her from the apartment where she has lived her entire life.  She is terrified that the police may raid her apartment yet a third time.  Her little children have been extremely traumatized by the conduct of the police, and by the forced separation from their mother last September.

### FIRST CLAIM FOR RELIEF

49.    Plaintiff repeats and realleges the allegations contained in ¶¶ 1-48.

50.    Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### SECOND CLAIM FOR RELIEF

51.    Plaintiff repeats and realleges the allegations contained in ¶¶ 1-48 and 50.

52.    The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police detectives and police officers.

53.    The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police detectives and police officers constitutes gross and deliberate indifference to unconstitutional conduct by those individuals.

54.    The official policies, practices and customs of the City of New York and the NYPD, alleged in ¶¶ 1-48, 50 and 52-53 violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### THIRD CLAIM FOR RELIEF

55.    Plaintiff repeats and realleges the allegations contained in ¶¶ 1-48, 50, and 52-54.

56.    The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, malicious prosecution, assault, battery, illegal search and seizure, interference with parental rights, the intentional, willful and malicious infliction of severe physical, mental and emotional distress, and employee negligence.

57.    The conduct toward plaintiff alleged herein subjected him to trauma, shock, debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

### FOURTH CLAIM FOR RELIEF

58.    Plaintiff repeats and realleges the allegations contained in ¶¶ 1-48, 50, 52-54, and 56-57.

58.    At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a)    Compensatory damages against all defendants, jointly and severally;

(b)    Punitive damages against all individual defendants, jointly and severally;

(c)    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d)    Such other and further relief as this Court deems just and proper.

Dated:   New York, New York
             January 22, 2009

10

**JOEL BERGER (JB3269)**
360 Lexington Avenue, 16th Fl.
New York, New York 10017
(212) 687-4911

**ATTORNEY FOR PLAINTIFF**



**DISTRICT ATTORNEY**
OF THE
**COUNTY OF NEW YORK**
ONE HOGAN PLACE
New York, N. Y. 10013
(212) 335-9000



**ROBERT M. MORGENTHAU**
DISTRICT ATTORNEY

September 22, 2008

To Whom It May Concern:

On 9/18/2008, the New York District Attorney's office declined to prosecute charge(s) against the individual listed below:

Defendant Name:  Chiclana, Rosa
Address:  2205 2 AVENUE, 3A
MANHATTAN, NY 10029
Date of Birth:  3/24/1985
Original Charge(s):  PL 2201601, PL 2205002,
Arrest Number:  M2008679254
Arrest Date:  9/17/2008
NYSID:  2699164R

Please address all further inquiries to Donna Francavilla at (212) 335-9884.

Sincerely,

VALID ONLY WITH
RAISED SEAL.

Donna Francavilla
Central Services Unit
Decline to Prosecute Unit



POLICE DEPARTMENT

Date 9/18/08

To Whom It May Concern:

The New York City Police Department has been notified that the New York County District Attorney's Office has declined to prosecute charges against the individual listed below:

Name: Chiclana Rosa

Date of Birth: 03·24·85

Arrest Number: M08679234R

Date of Arrest: 09 18 08

Please address all further inquiries to Donna Francavilla (212) 335-9884.

CJA/NYPD
COURTESY  ·  PROFESSIONALISM  ·  RESPECT
Website: http://nyc.gov/nypd



**DISTRICT ATTORNEY**
OF THE
**COUNTY OF NEW YORK**
**ONE HOGAN PLACE**
**New York, N. Y. 10013**
**(212) 335-9000**



**ROBERT M. MORGENTHAU**
DISTRICT ATTORNEY

September 22, 2008

To Whom It May Concern:

      On 1/12/2008, the New York District Attorney's office declined to prosecute charge(s) against the individual listed below:

|  |  |
|---|---|
| Defendant Name: | Chiclana, Rosa |
| Address: | 2205 2 AVENUE, 3A |
|  | MANHATTAN, NY 10029 |
| Date of Birth: | 3/24/1985 |
| Original Charge(s): | PL 2201601, PL 2211001, PL 2210500, |
| Arrest Number: | M2008603604 |
| Arrest Date: | 1/11/2008 |
| NYSID: | 2699164R |

      Please address all further inquiries to Donna Francavilla at (212) 335-9884.

Sincerely,

VALID ONLY WITH
RAISED SEAL.

Donna Francavilla
Central Services Unit
Decline to Prosecute Unit

 POLICE DEPARTMENT

Date ___1/12/08___

To Whom It May Concern:

    The New York City Police Department has been notified that the New York County District Attorney's Office has declined to prosecute charges against the individual listed below.

Name: ____CHICLANA , ROSA____

Date of Birth: ____3-24-85____

Arrest Number: ____M08603604 R____

Date of Arrest: ____1-11-08____

    Please address all further inquiries to Donna Francavilla (212) 335-9884.