UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROSA CHICLANA, individually and as Mother and
Natural Guardian of DIANDRE SANTIAGO and
ANDREA SANTIAGO,

                        Plaintiffs,

                 -against-

THE CITY OF NEW YORK, DETECTIVE MICHAEL
BRACKEN (Shield 1815, Narcotics Borough Manhattan
North), DETECTIVE GLENDA WAJER (Shield 7574,
Narcotics Borough Manhattan North), and CHILD CARE
WORKERS SCHEHEREZADE NEWTON, KENNETH
EDEBIRI and YOLANDA EDWARDS (New York City
Administration For Children's Services),

                       Defendants.
-------------------------------------------------------------------X

09 CV 623 (CM)

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff **ROSA CHICLANA, individually and as Mother and Natural Guardian of DIANDRE SANTIAGO and ANDREA SANTIAGO,** by her attorney, Joel Berger, Esq., for her complaint alleges, upon information and belief, as follows:

### *NATURE OF THE ACTION*

1. This is an action to recover money damages arising out of defendants' violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including false arrest, false imprisonment, malicious prosecution, illegal search and seizure, and interference with parental rights.

### *JURISDICTION AND VENUE*

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States.

3. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

## *PENDENT JURISDICTION*

5. This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On December 11, 2008, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

7. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8. This action was being commenced within one year and ninety days after the happening of the events upon which the claims are based.

## *JURY DEMAND*

9. Plaintiff demands trial by jury in this action.

## *PARTIES*

10. Plaintiff **ROSA CHICLANA** is a citizen of the United States and a resident of the State of New York. She is an Hispanic woman, age 23. She is the mother of two children, a boy named Diandre (age 7) and a girl named Andrea (12 months -- 8 months at the time of the most recent incident alleged herein). She has no prior criminal record of any kind and no prior record of child abuse or neglect of any kind. She has lived in the same apartment of the Jefferson Houses of the NYC Housing Authority her entire life, without incident.

11. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the New York City Police Department (NYPD), a department or

agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein. It also operates the Administration for Children's Services (ACS), a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of child care workers and supervisory child care workers, including the individually named defendants herein

12. At all times relevant herein, defendants Michael Bracken (Shield 1815) and Glenda Wajer were detectives employed by the NYPD, assigned to Narcotics Borough Manhattan North.

13. At all times relevant herein, defendants Scheherezade Newton and Kenneth Edebiri were ACS child care workers (sometimes referred to as child protective specialists) and defendant Yolanda Edwards was an ACS child care or child protective supervisor.

14. At all times relevant herein, defendants Bracken, Wajer, Newton, Edebiri and Edwards were acting as agents, servants and employees of defendant City of New York and the NYPD.

15. At all times relevant herein, all defendants were all acting under color of state law.

### *FACTS*

16. On Wednesday, September 17, 2008, at approximately 11:00 P.M., Ms. Chiclana was in bed in her dwelling. She had allowed her two children to fall asleep on her bed and was about to put them to bed in their own room.

17. Suddenly numerous police officers in plain clothes broke through the lock on her door without first knocking or otherwise announcing their presence, and burst into the apartment.

One of the officers was defendant NYPD Detective Bracken. Two of the officers entered her bedroom, pointed their guns directly at her and her children, and ordered her to stand against a wall. Approximately five other officers, including defendant detective Wajer, began searching the living room. Later Ms. Chiclana was allowed to move to the living room with the children.

18. Ms. Chiclana and her children were terrified.

19. The officers spent approximately a half-hour searching the apartment thoroughly, but found no contraband of any kind.

20. Ms. Chiclana was taken into her bathroom by defendant Wajer and subjected to a humiliating body-cavity strip search; she was required raise her bra, and to pull down her panties, bend over and cough.

21. The body-cavity strip search uncovered no contraband, either.

22. At no time did the officers display any search warrant or state that they had one.

23. The defendant detectives explicitly conceded to Ms. Chiclana on September 17, 2008, that they had not found any contraband attributable to her, but told her that she nonetheless had to be detained, while assuring her that she would be released shortly. She was never told what the police were charging her with to justify the arrest.

24. Ms. Chiclana was taken in handcuffs to a police van and then transported to the 25th Police Precinct, where she was placed in a holding cell.

25. Subsequently Ms. Chiclana was transported, again in handcuffs, to Manhattan Central Booking, where she endured yet another humiliating body-cavity strip search.

26. To avoid filling out paperwork admitting that they had obtained and executed a search

4

warrant yet had come up empty-handed as to Ms. Chiclana, these experienced narcotics officers pretended that ordinary household zip lock bags found in her kitchen, which she uses to preserve food and to pack her son's school lunches, were narcotics paraphernalia.

27. On this flimsy basis, Ms. Chiclana was charged with possession of narcotics with intent to sell, a Class B felony (Penal Law § 220.16 (1)) and criminal use of drug paraphernalia, a Class A misdemeanor (Penal Law § 220.50 (2)).

28. The detectives also arrested Anthony Santiago, a visitor to the apartment who is an uncle of Ms. Chiclana's children, on the ground that a zip lock bag found in his pocket contained traces of a substance alleged to be cocaine. The substance was subsequently tested and found to be devoid of any presence of narcotics.

29 New York County District Attorney's office declined to prosecute both Ms. Chiclana and Mr. Santiago, and Ms. Chiclana was released from Manhattan Central Booking, without having to appear in court, at approximately 6:00 P.M. on September 18. She had been in custody for approximately 19 hours. A document reflecting the decision to decline prosecution as to her is annexed (arrest number M2008679254).

30. On January 11, 2008, Ms. Chiclana was also arrested and subjected to the same humiliations under virtually identical circumstances after detectives, including Bracken and Wajer, raided her apartment.

31. To avoid filling out paperwork admitting that they had obtained and executed a search warrant yet had come up empty-handed as to Ms. Chiclana, these experienced narcotics officers alleged in January 2008 that three small bags of marijuana allegedly found in the bedroom

of another resident of the apartment, Michael Negron (a cousin of Ms. Chiclana), were attributable to Ms. Chiclana.

32. On this flimsy basis, Ms. Chiclana was charged in January 2008 with the same two offenses as in September 2008 -- possession of narcotics with intent to sell, a Class B felony (Penal Law § 220.16 (1) – an offense that does not even apply to the sale of marijuana) and criminal use of drug paraphernalia, a Class A misdemeanor (Penal Law § 220.50 (2)) -- and also with criminal possession of marijuana as a Class B misdemeanor (Penal Law § 221.10 (1) – an offense limited to possession in a public place, burning or open to public view, not to possession within a residence).

33. Ms. Chiclana was not the target of either raid. The police paperwork concedes that on both occasions the target was Michael Negron. Ms. Chiclana was not suspected on either occasion of having any involvement of any kind with cocaine, marijuana, or any other illegal substance.

34. As on September 17, 2008, the defendant detectives explicitly conceded to Ms. Chiclana on January 11, 2008, that they had not found any contraband attributable to her, but told her that she nonetheless had to be detained, while assuring her that she would be released shortly. She was never told what the police were charging her with to justify the arrest. As on September 17, 2008, the District Attorney's office declined to prosecute and Ms. Chiclana was released from Manhattan Central Booking in January 2008 without having to appear in court. She was in custody for approximately 20 hours. A document reflecting the decision to decline prosecution on this occasion is also annexed (arrest number M2008603604).

35. Defendant Wajer, who participated on both occasions, told Ms. Chiclana at the 25th

Precinct in September 2008 that she intended to report Ms. Chiclana to the Administration for Children's Services (ACS) as being an unfit parent.

36. Even though the children's godmother lived next door and was watching over the children while Ms. Chiclana was under arrest in September 2008, and even though the godmother had taken care of the children in January 2008 during the period of Ms. Chiclana's arrest, and even though defendant Wajer knew perfectly well that there was no case against Ms. Chiclana and that she would be released shortly without charges, defendant Wajer followed through with her threat, contacted ACS, and falsely accused Ms. Chiclana of being an unfit parent.

37. The children were terrified at the sight of their mother being arrested.

38. On the morning of September 18, 2008, shortly before Ms. Chiclana was released without any charges, and without bothering to ascertain whether Ms. Chiclana had been charged, defendant Edwards ordered -- solely upon the accusation of defendant Wajer -- that Diandre and little Andrea be seized and placed them with strangers in a foster home. Defendant Edebiri came to the apartment and took the children away.

39. The children were terrified at being seized and separated from their mother.

40. On September 19, 2008, after Ms. Chiclana had returned home with all charges dismissed and found her children gone, defendant Newton came to the apartment, told Ms. Chiclana that her children had been placed with strangers in a foster home, and further told Ms. Chiclana that ACS was following through on Wajer's accusation by initiating a proceeding to have the children remain in foster care. ACS documents confirm that the proceeding was based upon the conduct of the police in arresting plaintiff, and make no mention of the fact that she was never charged.

41. Ms. Chiclana did not regain custody of her children until October 1, 2008 -- two weeks after the incident -- when a Family Court Judge determined that there was no basis for their being in foster care.

42. From September 17 through October 1, 2008, Ms. Chiclana she was allowed to visit her children only once, for a one hour visit.

43. To this day there is still an open case against Ms. Chiclana at ACS, and she must endure the scrutiny of home visits. Ms. Chiclana has no prior history of any ACS involvement with her family. She lives in fear that ACS may take her children away from her again.

44. The pendency of an open ACS case has harmed Ms. Chiclana's chances for employment. For example, one day care center recently refused to hire her because of the ACS case.

45. In addition to the ACS scrutiny, Ms. Chiclana also faced scrutiny by the New York City Housing Authority (NYCHA) over the two totally unjustified arrests. She had to live in fear that NYCHA would ban her from the apartment where she has lived her entire life.

46. On February 11, 2008 after a NYCHA hearing at which defendant Bracken testified and presented exhibits, a NYCHA hearing officer overruled all charges of criminal conduct within the apartment. Accepting proof that Michael Negron no longer lived in the apartment (a driver's license reflecting a Pennsylvania address), NYCHA banned him permanently from the apartment but only because of an off-premises arrest in October 2008 indicating undesirability (possession of a knife, sentence conditional discharge and 5 days community service.) The leaseholder, Carmen Chiclana (plaintiff's grandmother), was placed on probation for a year solely for being in arrears on her rent.

47. Plaintiff Chiclana is terrified that the police may raid her apartment yet a third time.

48. Ms. Chiclana's little children have been extremely traumatized by the conduct of the police, and by the forced separation from their mother last September.

### *FIRST CLAIM FOR RELIEF*

49. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-48.

50. Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *SECOND CLAIM FOR RELIEF*

51. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-48 and 50.

52. The acts complained of herein are a direct and proximate result of the failure of the City of New York, the NYPD and ACS properly to select, train, supervise, promote and discipline their personnel.

53. The failure of the City of New York, the NYPD and ACS properly to select, train, supervise, promote and discipline their personnel constitutes gross and deliberate indifference to unconstitutional conduct by those individuals.

54. The official policies, practices and customs of the City of New York, the NYPD and ACS, alleged in ¶¶ 1-48, 50 and 52-53 violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

## THIRD CLAIM FOR RELIEF

55. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-48, 50, and 52-54.

56. The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, malicious prosecution, assault, battery, illegal search and seizure, interference with parental rights, the intentional, willful and malicious infliction of severe physical, mental and emotional distress, and employee negligence.

57. The conduct toward plaintiff alleged herein subjected him to trauma, shock, debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

## FOURTH CLAIM FOR RELIEF

58. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-48, 50, 52-54, and 56-57.

58. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 3, 2009

                                                          **JOEL BERGER (JB3269)**
                                                          360 Lexington Avenue, 16th Fl.
                                                          New York, New York 10017
                                                          (212) 687-4911

                                                    **ATTORNEY FOR PLAINTIFF**

**TO: BRIAN G. MAXEY, ESQ**
      Assistant Corporation Counsel
      100 Church Street
      New York, NY 10007

# DISTRICT ATTORNEY OF THE COUNTY OF NEW YORK

| IN THE MATTER OF | | |
|---|---|---|
| Rosa Chiclana (F 23) | Charge: | PL220.16(1) |
| | NYSID Number: | 02699164R |
| 9;2892 | Arrest Number: | M08679254 |
| | Arresting Officer: | Michael Bracken |
| | Tax ID: | 898963 |
| | Command: | Narcotic Boro Manhattan North |
| | Occurrence Date: | 09/17/08 |
| Defendant | Occurrence Time: | 11:15 PM |
| | Location: | |

## DECLINATION OF PROSECUTION FOR THE REASON(S) SET FORTH BELOW, PROSECUTION OF THIS CASE WAS DECLINED

Unable to Establish Necessary Element of the Crime

On the evening of September 17, 2008, police officers entered 2205 Second Avenue, Apartment 3A, pursuant to a search warrant. Upon entering, the police encountered two individuals, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉, who was in the living room of the apartment, and the defendant, Rosa Chiclana, who was in a back bedroom, neither of whom were the target of said search warrant. Upon a search of the apartment, police recovered a ziplock bag of white powder from defendant Santiago's front pants pocket, which was field tested and tested negative for a controlled substance, and fifty to one-hundred small clear ziplock bags in a bag in the kitchen, which is located next to the living room. Based on the proximity of both individuals in the apartment, and the fact that no illegal substances were found on the person of the defendant or in the bedroom in which she was found, the people decline to prosecute this case at this time.

DATED: Thursday, September 18, 2008

BY: _____
HAYWARD, RYAN

BY: _____
SUPERVISING ADA (SIGN)

_____
SUPERVISING ADA (PRINT)      CHICLANA - 12

ACT 3 Version 4.3.0 Created on 09/18/08 12:40 PM

# DISTRICT ATTORNEY OF THE COUNTY OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF | |
| Rosa Chiclana (F 22) | |
| #34240 | |
| Defendant | |

| | |
|---|---|
| Charge: | PL221.05 |
| NYSID Number: | 02699164R |
| Arrest Number: | M08603604 |
| Arresting Officer: | Michael Bracken |
| Tax ID: | 898963 |
| Command: | Narcotic Boro Manhattan North |
| Occurrence Date: | 01/11/08 |
| Occurrence Time: | 9:30:00 PM |
| Location: | |

## DECLINATION OF PROSECUTION FOR THE REASON(S) SET FORTH BELOW, PROSECUTION OF THIS CASE WAS DECLINED

Unable to Establish Necessary Element of the Crime: Three bags of marijuana were found inside a private home. Dominion and control cannot be proven under these circumstances.

DATED: Saturday, January 12, 2008

BY: _____
Turino, Samantha

BY: _____
SUPERVISING ADA

CHICLANA - 29

ACT 5 Version 4.2.6 Created on 01/12/08 2:11 PM